Tompkins, J.,
delivered the opinion of the Court.
This is an action of detinue, brought by the appellant, McDonald, as administrator, against Walton, the appellee, to recover certain slaves. The pleas were non detinet, and the statute of limitations; a verdict was found for the defendant on the issues made up; and to reverse the judgment rendered on that verdict, the present appeal is taken. Erom the facts saved, it appears that the plaintiff’s intestate, David Polk, alias Pogue, and Rebecca Walton, intermarried in the State of North Carolina, in the year 1805 ; that before, and at the time of the marriage, said Polk was possessed oLcertain slaves, in the bill of exceptions mentioned, and for which, and their descendants, this action was brought. That shortly after said marriage, said Polk and wife removed from North Carolina to Kentucky, and settled on an Island in the Ohio river, taking said slaves with them. That in January, 1807 or 8, said Polk died at his residence in Kentucky, and that in the last of February, or first of March, of the same year, the said Rebecca, widow of Polk, left Kentucky, and removed to upper Louisiana, now Missouri, taking with her the aforesaid slaves, and one other, born of one of the first mentioned in Kentucky. That said Polk had no children, and,at the time of his death had no family living with him, except his wife and the aforesaid slaves. That in the month of April, of the same year, the said Rebecca intermarried with one Absalom Chapman, a young man without property. That soon after their marriage, Chapman and his wife returned to Kentucky, on a visit, leaving the slaves here, and after an absence of a few months, returned, and settled at Point Labbadie, in St. Louis county, having said slaves in their possession.- That after living there more than a year, they removed to some place unknown, in the lower country. That about the year 1815, said Chapman and wife, returned to St. Louis county, bringing with them said slaves and their increase, and remained in possession of them till 1817, when Chapman died, and a few months thereafter said *522 Rebecca died, leaving several children of the marriage. That on the 19th of June 3826, the plaintiff obtained letters of administration of the estate of said D. Polk, or Pogue. That Chapman appointed said defendant the executor of his last will. That the defendant, having settled the estate of the testator, was appointed guardian to the children of Chapman, by said marriage, and as such, now holds some of the slaves aforesaid. No other material evidence appears to have been given.
The Court, at the instance of the defendant, instructed the jury, that if they found, from the evidence, that Walton, and those under whom he holds, have had exclusive possession of any of the slaves in question, for the period of fifteen, years,, under a claim of title adverse tq and in exclusion of all other persons, they ought to find for the defendant. Two other instructions, varying a little in terms, were prayed and given for the- defendant. The plaintiff prayed the Court to instruct the jury, that although Walton, the defendant, had possession of the slaves five years, still if there was no person authorized to sue for said slaves, in right of Pogue, till 1826, that possession is no, bar to the action. The plaintiff’ prayed a second instruction, varying in terms, hut substantially the same, both of which were refused by theCourtand the Court instructed the jury, that if Pogue, himself, were suing here, he would be barred by the possession here proved, and that his administrator could have no other privilege than the- intestate himself could have, were he now living» Letters of administration may at any time he taken out after the death of the intestate •, and if the right of action for these slaves had accrued to Polk, alias Pogue, there is no doubt but the administrator would have been barred. But before the administrator was appointed, he could have no right of action. The defendant seems to have abandoned all thought of ascertaining his right under the statute of limitations, and to rest his claim on the long, uninterrupted, adverse possession of himself, and those under whom lie claims. Peake’s Evidence, pp. 22 and 24, notes E. and F. have been referred to. The first of these causes is Gray v. Gardner, 3 Mass. Rep., where it is said, that after twenty years acquiescence, by the heirs of an intestate, in possession of the real estate of their ancestor, holden under a sale by the administrator, the Court will presume the administrator took the oath, and made all the advertisements previous to the sale, as required by law, evidence being given of the license to sell, and of the actual sale. But in none of these cases, is mere length of possession held to be of much weight, and we "are disposed to allow no pretensions’to adverse possession when there was no person in existence to reclaim the property. Some cases decided in Virginia and in the Supreme Court of the United States, have also been cited. The sum of these is, that in Virginia, by analogy to the statute of limitations of that State, five years peaceable possession of a slave, will give a good title j but until our Legislature shall express its will more clearly than it has in our statute of limitations, ■ we are inclined to put the person, possessed of. such property, to maintain his right to it, as he would have done at common law. It is admitted that the law of Kentucky, (where Pogue died,)' must regulate the distribution of these slaves $ hut it is barely possible that the widow of Pogue could, in so short a time after his death, have left that State rightfully possessed of them. This we can say without much hesitation, although no evidence of the- delays made, necessary by the laws of Kentucky, has been offered. But the testimony introduced by the plaintiff, was acknowledged'sufficient to throw on the defendant the burthea of proving any right he, or his testator, might have had under those laws, or by any other means. The removal to Upper Louisiana, (now Missouri) in a few weeks af *523 ter the the death of Pogue, the early marriage of the widow with Chapman, and the subsequent removal from these, then western limits of American settlements, to parts unknown, induce a strong suspicion of industrious concealment of these slaves from somebody. If it he true, that, through the laws of Kentucky, these heirs of Chapman derive any right to the slaves in question, that right can he established against Pogue’e administrator. It is the opinion of the Court, that the instructions prayed for hy the plaintiff, should have been given to the jury.
The judgment of. the Circuit Court is reversed, and this cause is remanded for further proceedings, in conformity with this opinion.